# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| ZILKR CLOUD TECHNOLOGIES, LLC | § § | |
| v. | § § | CIVIL ACTION NO. 3:21-CV-2807-S |
| RINGCENTRAL, INC. | § § | |

## MEMEMORANDUM OPINION AND ORDER

Before the Court is Defendant RingCentral, Inc.'s Motion to Dismiss for Improper Venue ("Motion to Dismiss") or, in the Alternative, to Transfer to the Northern District of California ("Motion to Transfer") (collectively, "Motion") [ECF No. 11]. The Court has considered the Complaint [ECF No. 1], Defendant's Motion, Zilkr Cloud Technologies, LLC's Opposition to Defendant's Motion to Dismiss for Improper Venue or, in the Alternative, to Transfer to the Northern District of California ("Response") [ECF No. 22], RingCentral, Inc.'s Reply Brief in Support of its Motion to Dismiss for Improper Venue or, in the Alternative, to Transfer to the Northern District of California ("Reply") [ECF No. 24], and the exhibits submitted by the parties. *See* ECF Nos. 12, 23, 25.[1] For the following reasons, the Court **GRANTS** Defendant's Motion to Dismiss.

## I.  BACKGROUND

Plaintiff Zilkr Cloud Technologies, LLC brings this patent infringement action against Defendant RingCentral, Inc., alleging that Defendant has directly infringed and induces customers to directly infringe four patents owned by Plaintiff ("patents-in-suit"). Compl. [ECF No. 1] ¶¶ 18-26 (alleging infringement of U.S. Patent Nos. 9,210,254; 9,742,926; 9,883,047; and 9,998,607).

---

[1] Because the Court concludes that venue is improper based on the record before it at the time of Plaintiff's Response and without relying on the additional exhibits submitted in support of Defendant's Reply, the Court **terminates as moot** Plaintiff's Motion to Strike [ECF No. 27].

Plaintiff is a Texas limited liability company with a principal place of business in Austin, Texas. *Id.* ¶ 17. Defendant is a Delaware corporation with its principal place of business in Belmont, California. *Id.* ¶ 3. Plaintiff is tech start-up specializing in cloud technology geared toward solving "integration problems" faced by telecommunications companies. *Id.* ¶ 17. The Complaint alleges that Plaintiff developed its patented technology to "provide technical solutions for telecommunications systems," and that the patents-in-suit allow integration of multiple third-party services into a unified telecommunications platform. *Id.* ¶¶ 25-26. Plaintiff contends that the infringement began after several of Defendant's employees met with Plaintiff's team "virtually from [Plaintiff's] Austin offices" in September 2015. *Id.* ¶ 29. At those meetings, Plaintiff allegedly disclosed to Defendant's team "the patents surrounding its platform and technology." *Id.* According to Plaintiff, Defendant subsequently took the information from the meeting and "copied those features" into its own products. *Id.*

The Complaint states that venue is proper because Defendant has committed acts of infringement in the Northern District of Texas ("District"), has employees that work in this District and elsewhere in Texas, seeks job applicants in this District, and holds "customer events" in this District. *Id.* ¶¶ 7, 8-16. Defendant now moves to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a), or alternatively, to transfer the case to the Northern District of California under 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a).

## II.   LEGAL STANDARD

Whether venue is proper in this case is governed by 28 U.S.C. § 1400(b), the "sole and exclusive provision controlling venue in patent infringement actions." *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514, 1519 (2017). Under § 1400(b), a patent infringement case may only be brought in the judicial district where (1) the defendant resides, or (2) where the

defendant has committed acts of infringement and has a regular and established place of business. 28 U.S.C. § 1400(b). Under the first prong of § 1400(b), a domestic corporation "resides" only in its state of incorporation. *TC Heartland*, 137 S. Ct. at 1519. As to the second prong, the Federal Circuit has interpreted the "regular and established place of business" inquiry to impose three general requirements: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). If any statutory requirement is not satisfied, venue is improper. *Id.*

A party may move to dismiss a claim for improper venue under Federal Rule of Civil Procedure 12(b)(3). If a defendant challenges venue in a patent infringement action, the plaintiff bears the burden of establishing that the forum is a proper patent venue. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1014 (Fed. Cir. 2018). In determining whether venue is proper, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff. *Ambraco, Inc. v. Bossclip, B.V.*, 570 F.3d 233, 237-38 (5th Cir. 2009). Further, the Court may look beyond the complaint to evidence submitted by the parties. *Id.* If venue is improper, the Court must dismiss, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); FED. R. CIV. P. 12(b)(3).

### III. ANALYSIS

#### A. Defendant's Residence

Defendant asserts that venue is improper because it does not reside in or have a regular and established place of business in the Northern District of Texas.[2] Mot. 1. Because Defendant is a Delaware corporation, it is undisputed that the first prong of 28 U.S.C. § 1400(b) cannot be

---

[2] Though Defendant does not concede that it has committed any acts of infringement, it does not contest the "acts of infringement" requirement for purposes of its Motion only. Mot. 1 n.1.

3

satisfied. Accordingly, venue in this case hinges on the second prong: whether Defendant "has a regular and established place of business" in this District. 28 U.S.C. § 1400(b).

### B. Defendant's Regular and Established Place of Business

Plaintiff maintains that venue is proper because Defendant has "multiple" regular and established places of business in this District via (1) roughly two dozen remote employees of Defendant who reside in the Dallas area, (2) a data center housing Defendant's servers located in Dallas, and (3) tax records reflecting "over $8 million of business personal property" owned by Defendant in Dallas. Compl. ¶¶ 6-16; Resp. 1.[3] Defendant counters that none of these facts are sufficient to establish proper venue, and notes that it has no offices, rental property, or real estate in this District. Mot. 2. Viewing the facts in the light most favorable to Plaintiff and considering the factors set forth by the Federal Circuit in *Cray*, the Court finds that Plaintiff has not shown that Defendant has a regular and established place of business in this District. *See In re Cray*, 871 F.3d at 1360. Because none of the bases asserted by Plaintiff constitute Defendant's "regular and established place of business," as discussed below, venue in this District is improper.

#### (1) *Remote Employees*

The first element of *Cray*, that there is "a physical place in the district," is satisfied by an employee's home office in the district. *In re Cray*, 871 F.3d at 1362. Plaintiff contends that the home offices of Defendant's remote employees in the Dallas area constitute regular and established places of business because Defendant offers a home office stipend for remote employees, advertises remote job openings in the District, and has hosted at least one event for independent third-party resellers, or "channel partners" in the District. Resp. 8-9. In support, Plaintiff relies

---

[3] The alleged $8 million in "business personal property" is not mentioned in the Complaint and rather identified as a potential basis for venue for the first time in Plaintiff's Response.

on dozens of LinkedIn profiles of Defendant's employees stating "Dallas" or "Dallas/Fort Worth Area," under each person's title. Resp. 7; Pl.'s App. [ECF No. 23], at Appx289-403.

As an initial matter, the LinkedIn profiles offered by Plaintiff do not necessarily establish that any of Defendant's remote employees actually have a home office in this District—particularly given that a significant portion of the "Dallas/Fort Worth Area" lies within other judicial districts. *See* 28 U.S.C. § 124(c) (Collin and Denton Counties are located in the Eastern District of Texas). But even assuming the record establishes that all of these employees have home offices in the District, Plaintiff has not shown that these home offices are "regular and established place[s] of business" or, critically, "place[s] *of the defendant*" as required under the second and third *Cray* factors.[4] *In re Cray*, 871 F.3d at 1363 (emphasis added).

The Federal Circuit has held that to satisfy the third factor, the place cannot be solely a place of the defendant's employee. *Id.* at 1365 ("The statute clearly requires that venue be laid where 'the defendant has a regular and established place of business,' not where the defendant's employee owns a home in which he carries on some of the work that he does for the defendant.") (citations omitted). Rather, the defendant itself "must establish or ratify the place of business." *Id.* at 1363.

*Cray* provides several non-exhaustive factors to consider in determining whether a defendant has ratified a place of business, including (1) whether the defendant owns, leases, or rents any portion of its employees' homes; (2) whether employment is conditioned on "an employee's continued residence in the district" or "the storing of materials at a place in the district"; (3) "a defendant's representations" about that place, including "whether the defendant

---

[4] Because the Court finds that the home offices are not "place[s] of Defendant" as required under the third *Cray* factor, venue is improper on this basis alone. *See id.* at 1360 ("If any statutory requirement is not satisfied, venue is improper under §1400(b).").

lists the alleged place of business on a website"; and (4) "the nature and activity of the alleged place of business of the defendant in the district in comparison with that of other places of business of the defendant in other venues." *See id.* at 1362-63. Here, Defendant does not own, lease, or rent any portion of the employees' homes, did not play a role in selecting the location, and did not condition employment on its employees living in a particular location. Mot. 7; Def.'s App. [ECF No. 12], at Appx003. Nor does Defendant list any employee addresses on its website or office directory, or otherwise market any employee's home as its own location. *Id.* Further, Defendant does not direct, control, or expect any of its employees to store inventory or meet with channel partners in their homes. *Id.*

Plaintiff asserts that Defendant "fully embraces and advertises its presence in Dallas" because it advertises job openings in this District. Resp. 8; Pl.'s App., Appx454-56. In support, Plaintiff points to online job listings identifying Dallas, Texas as the location for various "remote" positions. *Id.* Again, Plaintiff provides no evidence that Defendant would require employees in any of the advertised positions to work at an office or facility in this District. In any event, recruiting potential employees from the Dallas area for a job position does not confer venue, which requires "a *physical place*, of business, *of the defendant*." *In re Cray*, 871 F.3d at 1364 (emphasis added).

Plaintiff also points to what appears to be a PowerPoint presentation geared toward potential channel partners in which Defendant references its managers as "geographically placed" to "provide in-person support and training" in materials for channel partners. Resp. 8; Pl.'s App., Appx404-435. According to Plaintiff, because remote employees and some channel partners reside in this District, Defendant has "geographically placed" its employees in the District and thus the home offices of those employees are its regular and established places of business. *Id.* But

6

Plaintiff has provided no evidence to show that Defendant stores inventory or requires employees to meet with channel partners in their homes. Rather, the evidence before the Court establishes that Defendant's employees are available to visit channel partner sites, not that they have places of business of their own. If anything, the primary location of remote employees' work lies in the offices of third-party channel partners, which do not amount to Defendant's places of business.

Plaintiff also contends that remote home offices are regular and established places of business because Defendant "regularly holds a Partner Academy in Dallas, and some of its Dallas employees participate in those events." Resp. 7; Pl.'s App. at Appx437-41, Appx443-47. In support, Plaintiff attaches screenshots from Twitter and Defendant's website advertising a handful of training and networking events held at breweries, restaurants, and hotels in the Dallas area. *Id.* However, almost all of the events referenced by Plaintiff occurred outside the Northern District of Texas. *See id.* at Appx437 (distillery in Lewisville, in Denton County), Appx439 (restaurant in Plano, in Collin County), Appx441 (beer garden in The Colony, in Denton County). Regardless, Plaintiff does not cite any authority for the proposition that hosting sporadic training events geared toward third-party partners at third-party facilities equates to having a physical place of business in that district. To the contrary, "sporadic activity cannot create venue." *In re Cray*, 871 F.3d at 1362.

Applying the *Cray* factors, the Court finds that Plaintiff has not shown that Defendant maintains a regular and established place of business in the Northern District of Texas based on any remote employees of Defendant with alleged home offices in this District.

(2) *Third-Party Data Center*

Plaintiff also asserts that venue is proper because Defendant has a "core data center in Dallas housing its servers," which Plaintiff claims is a key part of Defendant's cloud-based

telecommunications business. Resp. 1; *see also* Compl. ¶ 6. In support, Plaintiff provides the following evidence:

- Slides from what appears to be a marketing presentation stating that Defendant "has 17 data centers around the world." Resp. 10; Pl.'s App. at Appx417.

- A screenshot from Defendant's website stating "[Defendant's] world-class data centers and servers are continually monitored 24/7 and staffed by highly trained, on-site engineering specialists as well as by security guards." Resp. 10; Pl.'s App. at Appx499.

- A "RingCentral Data Centre Overview Document" downloaded from a third-party website with a map graphic of Defendant's data centers reflecting a center in Dallas. Resp. 10; Pl.'s App. at Appx503-04.

- A screenshot from the third-party website of Equinix, Inc., which states that "Dallas is the largest hub for communications and internet exchange points in the south central United States." Resp. 10; Pl.'s App. at Appx506.

Plaintiff also relies on the following statements in Defendant's Form 10-K filing:

- "We are a leading provider of global enterprise cloud communications, video meetings, collaboration, and contact center software-as-a-service ('SaaS') Solutions." Resp. 10; Pl.'s App. at Appx109.

- "Our ability to attract and retain customers depends on our ability to provide customers with a highly reliable subscription and even minor interruptions in our subscriptions could harm our brand and reputation and have a material adverse effect on our business." Resp. 10; Pl.'s App. at Appx124.

- "We currently serve our North American customers from geographically disparate data center hosting facilities in North America, where we lease space from Equinix, Inc." *Id.*

Defendant offers the sworn declaration of its Senior Vice President of Cloud Services Operations in support of its Motion, which provides that while Defendant has installed some equipment in a Dallas data center operated by Equinix, a third party, it "has no employees who work at the Equinix facility and does not lease space within that facility." Mot. 9; Declaration of Ashu Varshney ("Varshney Declaration"), Def.'s App., Appx001-005, at ¶ 16. Rather, Defendant pays Equinix a monthly fee in exchange for Equinix hosting Defendant's servers within the

Equinix data center. *Id.* Further, Equinix employees perform any maintenance of Defendant's equipment installed at the Equinix facility. *Id.*

Defendant does not dispute that it has servers at an Equinix data center in Dallas, Texas. However, despite Plaintiff's continual reference to "RingCentral's data center," the evidence is clear that Defendant does not own the data center, but rather has an agreement with Equinix whereby Defendant pays Equinix a monthly fee in exchange for Equinix hosting Defendant's servers. *Id.* And while Plaintiff relies on Defendant's 10-K filing in its Response, it ignores that throughout the same 10-K, Defendant repeatedly refers to the data centers as "third-party facilities," and states "[w]e do not control the operation of these facilities or of our other data center facilities." Pl.'s App. at Appx124. Accordingly, the issue is whether the presence of Defendant's servers at a third-party data center constitutes a regular and established place of business. The Court is guided by *In re Google, LLC*, 949 F.3d 1338 (Fed. Cir. 2020), in which the Federal Circuit addressed this very question.

In that case, the plaintiff sued Google for patent infringement in the Eastern District of Texas and alleged that venue was proper based on the presence of several Google servers in that District. *In re Google*, 949 F.3d at 1340. However, Google did not own the data centers where the servers were hosted, and instead had contracted with internet service providers ("ISPs") to host Google's servers in their data centers. *Id.* Pursuant to the agreements, Google's servers were installed in the ISP's server racks, where the servers remained physically stored. *Id.*

In reviewing whether the requirements of the patent venue statute were met, the Federal Circuit held that a "'regular and established place of business' requires the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'" *Id.* at 1345. The court looked to agency law in determining

9

whether the rack space occupied by the Google servers constituted Google's "place of business," ultimately concluding that the ISPs were not acting as Google's agent for purposes of § 1400(b). *Id.* The court further held that although the installation of the servers and provision of maintenance may suggest an agency relationship, the installation activity was a "one-time event for each server" that did not constitute the conduct of a "regular and established" business within the meaning of the statute. *Id.* at 1346.

Similarly here, Plaintiff argues that Defendant "directs and controls the activities of any individuals who touch their servers" and provides "critical engineering, monitoring, and troubleshooting" at the Dallas data center. Resp. 11. But the maintenance activities Plaintiff describes cannot serve as a basis for venue under *Google*. As the Federal Circuit explained, "the venue statute should be read to exclude agents' activities, such as maintenance, that are merely connected to, but do not themselves constitute, the defendant's conduct of business in the sense of production, storage, transport, and exchange of goods or services." *In re Google*, 949 F.3d at 1347. Further, Plaintiff does little more than speculate that Defendant directs these activities based on vague statements in Defendant's purported marketing materials and 10-K filing. Plaintiff does not cite any evidence establishing that the alleged "monitoring and troubleshooting" occurs at the Dallas data center, who performs the maintenance, or how it is connected to Defendant's business.

The same is true for Plaintiff's assertion that Defendant has ratified the Dallas data center as its own based on its purported marketing materials referring to its 17 third-party data centers worldwide as "our" data centers. Resp. 12; Pl.'s App. at Appx511-12. This broad speculation does not contradict the declaration provided by Defendant stating that it does not own, operate, or have any employees at the Equinix facility. *See* Varshney Decl., ¶¶ 15-16. There is no evidence in the record that Defendant is engaged in its core business activities at the Dallas data center—

through its own employees or through Equinix. *See In re Google*, 949 F.3d at 1347. The Court thus concludes that Plaintiff cannot establish venue based on the Equinix data center.

### (3) *Taxed Personal Property*

Finally, Plaintiff asserts that venue is proper because Defendant has "$8 million of business personal property used to conduct its operations" located in this District. Resp. 13. In support, Plaintiff points to Dallas Central Appraisal District tax records for Defendant's "business personal property account," which show that Defendant has been paying taxes on personal property located at a Dallas address. Pl.'s App. at Appx516-521. The documents also list Defendant's physical address as its California headquarters and reflect a $0 land value for any real property in the appraisal district attributable to Defendant. *Id.* Based on these tax records, Plaintiff asserts that the facility at which the personal property is located "likely has the presence of [Defendant's] agent or employee contractually obligated to manage, configure, and deliver the property for [Defendant's] customers to use the accused services," which is "likely" configured in this fashion pursuant to Defendant's "specific instructions." Resp. 13.

Plaintiff cites no authority for the proposition that the location of some personal property in a District constitutes a regular and established place of business, and the Court finds that Plaintiff's speculation regarding the "likely" arrangement does not, in conjunction with other evidence before the Court, suffice to establish venue here.[5]

Finally, in assessing the *Cray* factors, the Court may compare this District with another district where Defendant has employees or conducts business. *See In re Cray*, 871 F.3d at 1364. When comparing the nature and activity of Defendant's alleged place of business in the Northern

---

[5] The Court notes that Defendant's Reply and exhibits explain that the address listed on the tax records is a third-party distribution center where "IP telephony devices" leased by customers are stored and that Defendant does not own, lease, sublease, or store any inventory at that location. Reply 6; Def.'s Reply App. [ECF No. 25], at Appx719-721.

District of Texas with its other places of business, it is apparent that Defendant does not have a regular and established place of business in the District. Taking Plaintiff's allegations as true, around 30 remote employees currently live in the District. However, Defendant has over 1,300 employees nationwide—626 of whom work in Defendant's Belmont, California headquarters. Varshney Decl., ¶¶ 5-6. And while Defendant does maintain several brick-and-mortar offices, none are located anywhere in Texas. *Id.* ¶ 4. The nature and activity of Defendant's alleged place of business in this District compared to that of Defendant's place of business in California indicates that the alleged place of business here "is not really a place of business at all." *In re Cray*, 871 F.3d at 1364. For these reasons, the requirements of *Cray* that a defendant itself has a "regular and established place of business" in the district are not met.

## IV. CONCLUSION

Because venue is not proper in the Northern District of Texas, the Court must either "dismiss, or if it be in the interest of justice, transfer [the] case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); *cf.* 28 U.S.C. § 1404(a) (authorizing a discretionary transfer when venue is proper but another venue is more convenient). In the event its Motion is granted, Defendant requests dismissal or, in the alternative, transfer to the Northern District of California, where it resides and maintains its headquarters. Plaintiff does not propose an alternative transfer venue in its opposition. Nor does Plaintiff address why this case should proceed in this District as opposed to the Western District of Texas, where Plaintiff, its employees, and most of the key non-party witnesses—including several inventors of the patents-in-suit—reside. *See* Def.'s App., Appx008-009.

Based on the foregoing, the Court concludes that transfer is not in the interest of justice and dismissal without prejudice is the most appropriate course. It is therefore **ORDERED** that

Defendant's Motion to Dismiss is **GRANTED**, Defendant's Motion to Transfer is **TERMINATED AS MOOT**, and Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE** to refiling in a district where venue exists.

**SO ORDERED.**

SIGNED April 12, 2022.

_____
**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**